UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADRIENNE PACELLA,

                                                 **01 CV 4424 (SJ) (JMA)**

            Plaintiff,

                                                 **MEMORANDUM
                                                   AND ORDER**

    -against-


RESORTS CASINO HOTEL and
MILLAR ELEVATOR
SERVICE COMPANY,

            Defendants.
------------------------------------------------------------X
A P P E A R A N C E S :

LAW OFFICES OF EDMOND C. CHAKMAKIAN, P.C.
200 Motor Parkway, Suite A3
Hauppauge, New York 11788
By:    Edmond C. Chakmakian
Attorney for Plaintiff

MCELROY, DEUTSCH & MULVANEY, LLP
Wall Street Plaza
88 Pine Street, 21st Fl.
New York, NY 10005
By:    Brian J. Carey
Attorney for Defendant Resorts Casino

FARLEY & GLOCKNER, LLP
200 Old Country Road, Suite 340
Mineola, NY 11501
By:    Mark Khavkin
Attorney for Defendant Millar

JOHNSON, Senior District Judge:

Plaintiff Adrienne Pacella ("Plaintiff") brings this action to recover damages for injuries sustained by her on an escalator in Defendant Resorts Casino Hotel ("Resorts") maintained by Defendant Millar Elevator Service Company ("Millar") (collectively "Defendants").  Plaintiff claims that Defendants were negligent in performing inspections of the escalator.  Although she has submitted no direct evidence of Defendants' negligence, she argues that its negligence can be inferred through the *res ipsa loquitur* doctrine.  Defendants have moved for summary judgment.  For the following reasons, Defendants' motions are both DENIED.

# BACKGROUND[1] [2]

Plaintiff and her husband went to Atlantic City on June 14, 2000, on a "Young at Heart" vacation package which included lodging at Resorts Casino Hotel, a free pass to the hotel's buffet, and complimentary gambling coins. On her first day in Atlantic City, Plaintiff "ate, gambled, and went on the boardwalk." (Plaintiff Dep. at 70:16-17.) She did not go to the buffet because her pass was only good for one day, and she and her husband decided to use the pass the following day. (Id. at 69:9-12.)

The next day, Plaintiff had breakfast, gambled for some time, and then

---

[1] In considering Defendants' summary judgment motions, the Court notes that, as required, it has construed the facts in the light most favorable to the non-moving party, Plaintiff, "with all factual ambiguities resolved and all reasonable inferences drawn in [their] favor." Capobianco v. City of New York, 422 F.3d 47, 50 n.1 (2d Cir.2005).

[2] Defendants also assert that Plaintiff's motion should be denied because Plaintiff did not comply with Rule 56.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. During the pendency of a motion for summary judgment, Local Rule 56.1(a) requires the parties to file a separate and concise statement consisting of numbered paragraphs specifying the material facts as to which the moving party contends there are no genuine issues to be tried. Defendants note correctly that Plaintiff failed to respond to Defendants' Rule 56.1(a) and requests that this Court deem as admitted all factual assertions in that document. Generally, a "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir.2001) (citations omitted). While the Court could have exercised its discretion and accepted all assertions in Defendants Rule 56.1(a) filing as true, the Court instead searched the record for evidence of material issues of fact which might preclude summary judgment.

made her way to the buffet. (Id. at 72:11-73:12.) She took the escalator to get to the buffet. (Id. at 73:13-15.) Plaintiff boarded the escalator in order to return to the casino floor. As she descended the escalator, Plaintiff was directly in front of her husband, (Plaintiff Dep. at 77:1-20; Pacella Dep. at 15:17-19), behind her travel companions, the Tortorellas, (Plaintiff Dep. at 168:7-10; Pacella Dep. at 13:12:15; Tortorella Dep. at 16:13-14), and in front of Henry Belmont, (Plaintiff Dep. at 77:10-12; Pacella Dep. at 15:17-19; Belmont Dep. at 18:19-21). As far as Plaintiff and other witnesses remember, there was no debris on the elevator steps. (Plaintiff Dep. at 92:21-23; Belmont Dep. at 45:18-21.)

At some point, the elevator "stopped [and] [i]t jerked." (Plaintiff Dep. at 94:24-95:1.) Other passengers on the escalator also felt a "lurch." (Tortorella Dep. at 23:18.) As the escalator stopped, Plaintiff's husband, Tortorella, and Belmont heard a loud mechanical noise. (Pacella Dep. at 51:13-18; Belmont Dep. at 19:9-11; Tortorella Dep. at 19:9-11, 21:17-22.) Plaintiff claims that "the momentum was pushing me forward, so I, in turn, pushed back rather than fall forward. I pushed back, and I either twisted or I knocked my knee as I twisted and I went back." (Plaintiff Dep. at 94:11-14; Pacella Dep. at 22:8-10.) According to Plaintiff and other witnesses, the escalator's abrupt halt was the cause of Plaintiff's fall. (Plaintiff Dep. at 102:23-103:6; 135:15-20; Belmont Dep. at 49:17-25.) Plaintiff was the only person to fall on the escalator. (Pacella Dep. at 64:5-18.)

Immediately after her fall, Plaintiff exclaimed, "When the escalator stopped, I banged my knee on the side wall." (Belmont Dep. at 54:22-23.)

After Plaintiff fell, her husband helped her stand up and then assisted her down the remainder of the escalator. (Plaintiff Dep. at 104:2-4; 137:22-23.) Hotel security was waiting for Plaintiff and her husband at the bottom of the escalator. (Plaintiff Dep. at 138:4-10; Pacella Dep. at 28:15-17.) When Plaintiff arrived at the bottom, she told hotel security about her fall. (Plaintiff Dep. at 138:13-14.) Hotel security took Plaintiff to the nurse after she began to feel "achy." (Id. at 104:6-25.) Between the time she fell and the time she was taken to the nurse, Plaintiff did not see the escalator restart. (Plaintiff Dep. at 139:24-140:3; Pacella Dep. at 25:22-24.)

When Plaintiff went to see the nurse, the nurse stated "Oh, it's that escalator again," which Plaintiff understood to mean that something similar had happened previously on the same escalator. (Plaintiff Dep. at 106:17-19; 141:18-21; Pacella Dep. at 34:5-16.) After she returned from the nurse, Plaintiff told Tortorella about what the nurse had said. (Tortorella Dep. at 59:7-13.)

Within the week following her return from Atlantic City, Plaintiff noticed that her knee began to swell. (Plaintiff Dep. at 113:19-25; 115:5-10.) The pain in her knee increased and she could not walk without pain. (Id. at 147:14-21.) At the end of that week, Plaintiff sought treatment for her knee and was diagnosed as having a torn meniscus. (Id. at 122:15-16.) Plaintiff underwent surgery, which

5

was followed by physical therapy to rehabilitate her knee. (Id. at 126:4-7.) Plaintiff's doctor told her that she would be a candidate for knee replacement within five years. (Id. at 128:2-4.)

Plaintiff brought this action against Resorts, the owner of the premises, and Millar, the company responsible for the maintenance of the escalators on the premises. It is undisputed that Resorts entered into an agreement by which Millar was solely responsible for inspecting and maintaining the escalators within the hotel.

Defendants have now separately moved for summary judgment. Both Resorts and Millar claim that Plaintiff cannot prove that either defendant was negligent and that the doctrine of *res ipsa loquitur* does not apply.

## JURISDICTION

This Court has jurisdiction over this action as the case involves diversity and a demand in excess of $75,000. See 28 U.S.C. § 1332(a)(1).

## STANDARD OF REVIEW

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.2003). Material facts are those that may affect the outcome of the case.

See Anderson, 477 U.S. at 248. When considering a motion for summary judgment, the Court must view the evidence and any inferences that may be drawn in the light most favorable to the non-moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48. Rather, there must be enough evidence favoring the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Const. Corp. v. City of N.Y., 762 F.2d 243, 249 (2d Cir.1985).

In a negligence case, summary judgment is "'highly unusual' . . . because such a case requires a determination of the reasonableness of a party's conduct, and 'the assessment of reasonableness generally is a factual question to be addressed by the jury.'" Maizous v. Garraffa, No. 00 CV 4895, 2002 WL 1471556, at *3 (E.D.N.Y. April 30, 2002) (citing cases and quoting King v. Crossland Sav. Bank, 111 F.3d 251, 259 (2d Cir.1997)). "Nevertheless, 'the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment.'" Maizous, 2002 WL 1471556, at *3 (quoting Cumminsky v. Chandris, S.A., 719 F.Supp. 1183, 1186 (S.D.N.Y.1989)).

## DISCUSSION

**A.     Applicable law**

As a threshold matter, this Court must apply New York's choice of law rules to this action because New York is the forum state. See Machleder v. Diaz, 801 F.2d 46, 51 (2d Cir.1986), cert. denied, Machleder v. CBS, Inc., 479 U.S. 1088 (1987). New York employs an "interest analysis" to resolve choice of law conflicts: " '[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and ... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.' " Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189 (1985) (citations omitted). "Under this formulation, the significant contacts

are, almost exclusively, the parties' domiciles and the locus of the tort." Id. (citations omitted).

As a general rule, New York courts resolve true conflicts in tort cases by applying the law of the place of injury, unless "special circumstances" warrant a departure from the *lex loci delicti* rule. See, e.g., Neumeier v. Kuehner, 31 N.Y.2d 121, 128 (1972) (third rule). Because neither party has established that there are any circumstances in this case which necessitate deviation from the common rule, New Jersey law must govern this case.

**B.     Negligence**

Under New Jersey law, it is well established that a "in any case founded upon negligence, the [evidence] ultimately must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of the plaintiff's injuries." Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288, 471 A.2d 25 (N.J. 1984) (citing Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139-40, 84 A.2d 281 (N.J. 1951)). "An owner or possessor of property owes a higher degree of care to the business invitee because that person has been invited on the premises for purposes of the owner that often are commercial or business related." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433, 625 A.2d 1110 (N.J.1993). This duty to maintain safe premises and protect invitees imposes an affirmative obligation upon the commercial owner to inspect the premises to discover the actual condition as

well as any latent defects.  See Brown, 95 N.J. at 291.  However, a defendant cannot breach the "reasonable care" standard without actual or constructive notice of the condition that caused plaintiff's injury and a reasonable time to correct or warn about its existence.  Id. at 291.

Plaintiff does not clearly articulate how she believes Defendants breached their duty of care, but she appears to suggest that Defendants failed to practice proper preventive maintenance of the escalator.  There is, however, nothing in the record to support this.  Plaintiff's unsupported assertion that Defendants' duty of care required more frequent inspections cannot mask the fact that she cannot state with specificity what was defective in the escalator's machinery and, thus, cannot defeat summary judgment.  Indeed, the record indicates that the escalator underwent weekly inspection, and Plaintiff has not demonstrated that this was insufficiently frequent in order to meet Defendants' duty of care.

Even if it were true that Defendants failed to inspect the escalator frequently enough, however, Plaintiff has clearly failed to present any admissible evidence that would allow a jury to conclude that Defendants had actual or constructive notice of a defective condition in the escalator's machinery.[3]  Accordingly, Plaintiff

---

[3] Plaintiff testified that when she told the nurse what happened, the nurse indicated that something similar had occurred on the same escalator.  However, such testimony, as presented in the record before the Court, is hearsay and would not be admissible at trial.  For this reason, the Court has not considered the nurse's statement in considering this record.  See Fed.R.Civ.P. 56(e) (affidavits in

has failed to present any evidence that directly proves Defendants' negligence.

**C.**     *Res ipsa loquitur*

Under normal circumstances, negligence is not presumed but must be proven by a plaintiff. Buckelew v. Grossbard, 87 N.J. 512, 525, 435 A.2d 1150 (N.J. 1981); Meny v. Carlson, 6 N.J. 82, 91, 77 A.2d 245 (N.J. 1950). *Res ipsa loquitur* is a doctrine that allows a plaintiff to prove negligence by permitting an inference that the defendant has used less than due care. Brown, 95 N.J. at 288; Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, 139 A.2d 404 (N.J. 1958). Therefore, although a plaintiff bears the burden of proving that a defendant breached the duty of care, in cases in which the plaintiff cannot meet this burden, the doctrine of *res ipsa loquitur* may enable a plaintiff to establish a *prima facie* case. See Buckelew, 87 N.J. at 525-26.

The *res ipsa* doctrine "permits an inference of defendant's negligence 'where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own

---

opposition to summary judgment motion "shall set forth such facts as would be admissible in evidence"); see also Albert v. Loksen, 239 F.3d 256, 266 (2d Cir.2001) (citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir.1999) (holding that hearsay statement "did not constitute competent evidence" and thus could not be considered in opposition to motion for summary judgment)).

voluntary act or neglect.' " Buckelew, 87 N.J. at 525 (quoting Bornstein, 26 N.J. at 269). Defendants contend that Plaintiff fails on all three accounts, and therefore application of the doctrine in this case is inappropriate. We address each element of the *res ipsa* doctrine in turn.

### 1. The Occurrence Ordinarily Bespeaks Negligence

The first line of inquiry is whether the abrupt stoppage of the escalator is the sort of occurrence that typically bespeaks negligence. New Jersey courts have found that when a piece of complex machinery malfunctions, "it is more 'probable than not' the [malfunction] would not occur in the absence of negligence." Flis v. Mainco Elevator Co., 2006 WL 3152748 (N.J.Super.A.D. November 06, 2006). Clearly, an escalator is a complex machine and its malfunction is "unusual and not commonplace ... [and] strongly suggests a malfunction which in turn suggests neglect." Rose v. Port of New York Authority, 61 N.J. 129, 136-37, 293 A.2d 371 (1972); see, e.g., Flis, 2006 WL 3152748, at *2 (applying *res ipsa loquitur* where elevator suddenly dropped three floors).

Defendants argue that the *res ipsa* doctrine is inapplicable in the instant matter because there are other explanations for the escalator's abrupt halt. However, to invoke the *res ipsa* doctrine, a plaintiff need not eliminate all other explanations for the accident, but rather must merely show "that it is more probable than not that the defendant's negligence was a proximate cause of the mishap."

Brown, 95 N.J. at 287, 291-92, 295 (holding in case in which stairway abruptly collapsed that "the trial court properly instructed the jury to consider the issue of liability under the doctrine of *res ipsa loquitur*"); see also Eaton, 119 N.J. at 639, 642, 575 A.2d 858 (holding that "the unexplained departure of a car from the roadway 'ordinarily bespeaks negligence' " on driver's part and that failure to give *res ipsa* instruction constituted plain error).[4]

In order to show that negligence is the more probable explanation for the malfunction, Plaintiff has engaged the services of Patrick A. Carrajat, an expert in the field of elevator and escalator mechanics. Mr. Carrajat has reviewed the record and, in his opinion, although the escalator could have stopped for multiple reasons, it is more likely than not that the escalator malfunctioned because of negligent maintenance.[5] (Def. Millar's Opp., Ex. D at 3; Def. Resort's Opp., Ex. 17 at 3.)

---

[4] Millar cites to a New York case to stand for the proposition that summary judgment should be granted when the cause of an injury can be explained by something other than negligence. (Def. Millar's Opp. at 14). However, even Millar acknowledges that New Jersey law should apply (Id. at 5), and thus the Court has not taken into consideration New York's analysis of the *res ipsa* doctrine.

[5] Defendants claim that Mr. Carrajat's opinion is not based on any facts and should be disregarded as mere net opinion. However, Mr. Carrajat stated that his conclusion was based on a review of the depositions of the eyewitnesses, Millar's maintenance reports, a videotape of the incident, and his own knowledge of the operation of escalators. Clearly, Mr. Carrajat's opinion is rooted in fact, and Defendants argument to the contrary is without merit.

Further, Millar contends that Mr. Carrajat should be precluded from testifying because his resume does not bear the traditional qualifications of an

Therefore, taking the facts in the light most favorable to Plaintiff, the record "permit[s] an inference" of defectiveness. Sabloff v. Yamaha Motor Co., 59 N.J. 365, 366, 283 A.2d 321 (1971) (per curiam).

2. **Exclusive Control**

Defendants further contend that the *res ipsa* doctrine should not apply in this case because Plaintiff cannot show that they were in exclusive control of the escalator. Resorts contends that it was not exclusively in control of the escalator within its own building because it had a maintenance agreement with Millar. This argument, however, is unavailing because business owners owe a duty of care to their patrons regardless of any maintenance contract that the business owner enters into. See Apuzzio v. J. Fede Trucking, Inc., 355 N.J.Super. 122, 128-29, 809 A.2d 812, 816 (N.J.Super.A.D.2002) ("The word 'exclusive' when used to define the nature of the control necessary to invoke the doctrine of *res ipsa loquitur* does not connote that such control must be several and the defendant singular and never plural."); Meny v. Carlson, 6 N.J. at 94 ("[A]n instrumentality causing injury may

---

expert, such as formal training or education. However, under the liberal standard for qualifying experts in this Circuit, there is no requirement that a witness have formal education or training before being qualified as an expert. Fed.R.Evid. 702; see also Nimely v. City of New York, 414 F.3d 381, 395 (2d Cir.2005) (quoting same). Millar's contention that Mr. Carrajat cannot testify as an expert because he has not worked as an elevator mechanic since 1976 is likewise without merit. Millar has failed to assert any changes in the fundamental operation of escalators during the interim period such that Mr. Carrajat's opinion would be impermissible. Accordingly, it would be inappropriate to preclude Mr. Carrajat's expert testimony.

be in joint control of two defendants in which event the doctrine of *res ipsa loquitur* will apply against both of said defendants.") (citing cases).  Even if Millar bore the exclusive responsibility for the escalator's maintenance, Resorts employed Millar and was thus responsible for any of negligent maintenance.  <u>See</u>, <u>e.g.</u>, <u>id.</u>

Similarly, Millar cannot disclaim liability simply because it was the maintenance company rather than the business owner.  <u>See</u> <u>Flis</u>, 2006 WL 3152748 at *3 (finding that liability for causing an injury to an invitee was not limited to storeowners and could be applied to the maintenance company for injuries sustained by the malfunctioning of the elevator).  Generally, "the ambit of a maintenance contractor's duty to a third person may be measured by the nature and scope of its contractual undertaking."  <u>Rosenberg v. Otis Elevator Co.</u>, 366 N.J.Super. 292, 303, 841 A.2d 99, 105 (N.J.Super.A.D. 2004).  Here, the agreement between Defendants indicates that Millar undertook the exclusive responsibility of ensuring the maintenance of the escalators in the casino.  (<u>See</u> Resorts' Ex. 9.)  Accordingly, both Resorts and Millar were in exclusive control of the escalator and both can be held liable under a *res ipsa* theory.

### 3. **Plaintiff Did Not Contribute to Her Injury**

Defendants also believe that the doctrine of *res ipsa loquitur* should not apply here because Plaintiff cannot show that she fell because the escalator stopped abruptly.  Defendants largely rely on a videotape of the incident to support their

15

claim that Plaintiff's fall occurred before the escalator stopped. However, the videotape is not the clear and unambiguous evidence that Defendants make it out to be. At the outset, the Court notes that the video quality is quite poor, and because the videotape has recorded what appears to be far fewer than twenty-four frames per second, the viewer is presented with a herky-jerky picture. As a result, it is not clear whether certain escalator lights are turned off once Plaintiff falls and whether the escalator remains in motion after Plaintiff's fall. Because reasonable people could disagree about the conclusiveness of the videotape, this Court will defer to a jury the question of which event occurred first: Plaintiff's fall or the escalator's malfunction. Accordingly, for the purposes of the instant motion, Defendants have failed to show that Plaintiff was responsible for her own injuries.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions for summary judgment are both DENIED.

SO ORDERED.

Date: September __, 2007          _____
      Brooklyn, NY                              United States Senior District Judge